# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1772V

|  |  |
|---|---|
| SILVIA BAVLI,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: January 17, 2025 |

*Andrew Donald Downing*, Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner.

*Traci R. Patton*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION ON ATTORNEY'S FEES AND COSTS**[1]

On August 27, 2021, Silvia Bavli filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she received an influenza ("flu") vaccine on December 18, 2019, and thereafter suffered Guillain-Barré syndrome ("GBS"). Petition at 1. The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, the fees motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.     Relevant Procedural History

After the claim's initiation, Respondent filed a Rule 4(c) Report opposing compensation, on the grounds that Petitioner had failed to provide sufficient evidence to support the symptom onset required for any form of claim – Table or causation-in-fact. ECF No. 21 at 9-10. Following briefing by the parties, I issued a decision dismissing Petitioner's claim on April 14, 2024. ECF No. 31. Judgment entered on May 24, 2024. ECF No. 34.

On May 17, 2024, Petitioner filed a request for an award of $38,468.12 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs ("Motion") at 10, ECF No. 32. Emphasizing the gastrointestinal issues Petitioner experienced in December 2019, along with her assertions that she simultaneously experienced urinary incontinence (*id.* at 2), she insists that "[g]ood faith and reasonable basis are present," and "reasonable basis has existed throughout this case" (*id.* at 6).

Respondent reacted to the motion on May 30, 2024, indicating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring resolution of the amount to be awarded to my discretion. Respondent's Response to Motion at 2-3, 3 n.2, ECF No. 35. Respondent did not mention the additional requirements for an attorney's fees and costs award in non-compensated cases – good faith and reasonable basis. *See* Section 15(e)(1).

## II.    Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a

2

prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*, *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented.

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

*Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

For a GBS Table injury, onset must occur within three to 42-days post-vaccination. 42 C.F.R. § 100.3(a)XIV(D) (2017). For a non-Table injury, "a showing of a proximate temporal relationship between vaccination and injury" is required to meet the third *Althen* prong. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (setting forth the three-pronged test for causation). As I have previously noted, "other special masters have never gone beyond a two-month (meaning eight week) interval in holding that a vaccination caused a demyelinating illness." *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (citing *Aguayo v. Sec'y of Health & Human Servs.*, No. 12–563V, 2013 WL 441013, at *3 (Fed. Cl. Spec. Mstr. Jan. 15, 2013); *Corder v. Sec'y of Health & Human Servs.*, No. 08–228V, 2011 WL 2469736, at *27–*29 (Fed. Cl. Spec. Mstr. May 31, 2011) (proposed four-month onset period from vaccination to GBS too long; two months is longest reasonable timeframe)). And the adoption of a two-week "extension" for non-Table GBS claims is not a hard and fast rule (and may not be all that well supported from a medical or scientific standpoint in any event).

### III.     Abbreviated Factual Synopsis

Petitioner's prior history includes bloody stool and rectal bleeding, resulting in referral to gastrointestinal specialist. Exhibit 3 at 4-5. Further, Petitioner routinely saw a gastroenterologist for colonoscopies, and reported intermittent changes in her bowel habits since at least 2016. Exhibit 7 at 8. A colonoscopy in 2013 revealed diverticulitis, and another in 2017 revealed tubular adenoma. *Id.* at 24; Exhibit 3 at 29. Additionally, Petitioner reported bloody stools on September 18, 2019, approximately three months prior to vaccination. Exhibit 3 at 5.

On December 18, 2019, Petitioner received flu and Shingrix vaccines. Exhibit 2 at 2. There is no contemporaneous medical record evidence of any immediate vaccine reaction. Petitioner's next medical treatment visit occurred on February 3, 2020 – more than six weeks post-vaccination - when she saw Dr. Rimma Shaposhnikov, a gastroenterologist, with complaints of diarrhea, described as urgency and "accident x 2". Exhibit 7 at 38-39. Dr. Shaposhnikov noted that Petitioner had a family history of colon cancer and referred her for a colonoscopy. *Id.* at 45. After the visit, Petitioner's assessment was "[d]iarrhea of presumed infections origin." Exhibit 2 at 4.

4

Petitioner subsequently saw Dr. Peter-Brian Andersson, a neurologist, on February 28, 2020 (three weeks later). Petitioner reported sudden episodes of stool incontinence that occurred on January 30, 2020, but had experienced no similar issues "before or since." Exhibit 10 at 3. Dr. Andersson also noted that Petitioner had "contracted a nonspecific upper respiratory tract infection without fever but some cough and nasal discharge that had essentially resolved" in the beginning of February. *Id.* And she had developed a runny nose after returning from a cruise on February 25, 2020, that was improving. *Id.* Further, she reported progressing numbness in her fingers and toes beginning on *February 26, 2020* (approximately ten weeks post-vaccination), parenthesis in her arms when she bent forward, impaired balance, and "twisting pain in the left leg at night." *Id.* An examination revealed Petitioner's reflexes were absent, her gait was abnormal and "mildly unsteady". *Id.* at 5-6. Following electromyogram and nerve condition studies, Dr. Andersson concluded the results were abnormal and provided support for GBS. *Id.* at 133. He also noted the testing "was done at day 3 after symptom onset." *Id.*

The same day (February 28th), Petitioner went to the Tarzana Medical Center emergency room for weakness and difficulty walking over the past three days. Exhibit 14 at 4. She again reported that she had an upper respiratory infection ("URI") and still had a cough following a three-week cruise. *Id.* The treating physician noted that Petitioner had weakness in her lower extremities, but had a normal gait and coordination. *Id.* at 5-6.

Petitioner was admitted to the hospital from February 28 to March 3, 2020. Exhibit 14 at 8. She underwent an MRI, which showed mild cortical and deep atrophy, along with evidence of ethmoid sinus disease. *Id.* at 82. She also tested positive for influenza. *Id.* at 64, 72. Petitioner received five doses of intravenous immunoglobulin, gabapentin, Norco, and morphine. *Id.* at 10, 17, 53. Following a variety of testing, she was assessed with GBS "post viral". *Id.* at 72. Petitioner was discharged on March 3rd having improved, with the assessment again stating GBS "post viral. Numbness of lower extremities, much improved". *Id.* at 10.

Petitioner had a follow-up with her primary care physician on March 5, 2020, with reports of improving strength, but painful neuropathy in the evenings. Exhibit 7 at 46. However, by March 16, 2020, Petitioner stated to Dr. Andersson that she felt "almost back to normal" with no fatigue or new complaints. Exhibit 10 at 11. She also reported "two sudden episodes of stool incontinence with relatively loose stool" on January 30 that she has not had "before or since." *Id.* Dr. Andersson wrote that Petitioner made a "[r]emarkable recovery" and recommended stretching and exercise. *Id.* at 14.

On March 31, 2020, Petitioner reported new complaints to Dr. Andersson, including intermittent numbness in her extremities when walking. Exhibit 10 at 15. An examination showed Petitioner's movements and gait were normal. *Id.* at 17. She

5

continued to report congoing pain, paresthesias, numbness, and cognitive symptoms throughout April, May, and June of 2020. Exhibit 10 at 21, 22, 26, 28; Exhibit 7 at 60.

On August 24, 2020, Petitioner had an appointment at Rheumatology Associates. Ex. 4 at 38. The records state that she was diagnosed with GBS in February, and she had two episodes of bowel incontinence in January and February. *Id.*

Petitioner had a virtual office visit with Dr. Jeffrey Galpin, an infectious disease doctor, on September 4, 2020. He opined that "her symptoms may also have been caused by Guillain-Barre that was triggered by a type of flu." Ex. 8 at 163-66.

Dr. Andersson submitted a letter on March 19, 2021, stating that, to a degree of "reasonable medical probability", Petitioner's GBS developed after Petitioner's flu vaccine. Exhibit 11 at 1. He noted that Petitioner's case was unusual for the bladder and bowel symptomatology that developed twelve days post vaccination, and occurred intermittently until February 11th. *Id.* at 3. Further, Dr. Andersson stated that "[b]ladder involvement has been described in Guillain Barre Syndrome, and bowel incontinence in polyneuropathy," and he did not see the "sphincter involvement as indicating an alternative disease . . . because of the negative work-up and no other disease diagnosis." *Id.* at 3. When opining that Petitioner's condition met the diagnostic criteria for GBS, he cited symptomology present in February, adding that the transient bowel and bladder dysfunction Petitioner suffered earlier would not qualify as an "unclear cause antedating the typical [GBS] motor and sensory symptoms and signs." *Id.* at 3-4.

Petitioner also submitted an affidavit in support of her claim on June 21, 2021. Exhibit 1. She stated that she received a flu vaccine on December 18, 2019, and experienced three to four episodes of bladder incontinence through period of Christmas and New Years of 2019, and feelings of fatigue. *Id.* She also had six episodes of fecal incontinence and progressive fatigue in January of 2020. *Id.* With regard to neurological symptoms, Petitioner states that she began having tingling sensations and balance issues on February 25, 2020. *Id.* at 2.

### IV.     Analysis – Reasonable Basis

The objective evidence in this case shows Petitioner likely suffered the onset of GBS (as evidenced by actual neurologic symptoms - numbness, tingling, and pain in her extremities and gait difficulties), no sooner than February 26, 2020, two days before visits to her neurologist and the ER on February 28, 2020. This date was *70 days* after her December 18, 2019 vaccination, and approximately two to four weeks after experiencing an URI. Such an onset is not only well outside the Table's timeframe (which only goes

6

out to six weeks post-vaccination), but facially unreasonable for a causation-in-fact claim as well.

Petitioner does not dispute the timing of those symptoms, Instead, she argues that her GBS first manifested as fatigue and urinary incontinence prior to Christmas and New Years Eve celebrations – specifically four episodes of incontinence, the dates of which she is unable to recall. Motion at 2 (citing her affidavit, Exhibit 1 at ¶ 2). She also relies upon her claim that she experienced six episodes of bowel incontinence in January 2020, recalling dates ranging from January 8 and January 28, 2020. Motion at 2 (citing her affidavit, Exhibit 1 at ¶ 3).

However, the contemporaneous medical records make no mention of bladder incontinence in December or January, or fecal incontinence *prior to* the last few days of January 2020. Rather, when seen by her gastroenterologist on February 3rd, and her neurologist on February 28th, Petitioner described fecal incontinence beginning on January 30, 2020. Exhibit 7 at 38-39; Exhibit 10 at 3. Furthermore, Petitioner's well-documented pre-vaccination gastrointestinal issues undercut her assertion that the fecal incontinence she experienced in late January 2020, constituted an initial symptom of her GBS.

To support her argument, Petitioner references the previously filed letter from her neurologist, concluding that her GBS was caused by the flu vaccine she received.[4] Motion at 5 (referencing the neurologist's letter filed as Exhibit 11). However, the letter reveals that, when reaching this conclusion, the neurologist clearly relied upon *Petitioner's* account of earlier episodes of bladder and bowel incontinence – a contention lacking objective evidentiary corroboration. Exhibit 11 at 1, 3. And he failed to address the differences between this later provided medical history and the gastrointestinal symptoms Petitioner described during treatment,[5] or the URI Petitioner suffered in late January and/or early February 2020.[6]

---

[4] In her fees motion, Petitioner did not mention medical literature she relied upon when arguing that her alleged GBS injury should be compensated. But in dismissing the Petition, I deemed this study to be inapplicable to Petitioner's circumstances because that individual's "incontinence and diarrhea occurred three weeks *after* sudden onset of weakness." Dismissal Decision, filed Apr. 15, 2024, at 7 (citing Exhibit 15: Sandeep Kumar Kar *et al.*, *Faecal Incontinence in Guillain-Barre Syndrome with Bulbar Palsy-A Case Report with Review of Literature*, J. Clin. Exp. Cardiolog. 2016.

[5] When first seen by this neurologist on February 28, 2020, Petitioner described "two sudden episodes of stool incontinence with relatively loose stool" on January 30, 2020, adding that "[s]he has not had this before or since. Exhibit 10 at 3. A later entry in this same record states Petitioner "also reports an episode of isolated fecal incontinence a month ago associated with loose stool which she has never had before." *Id.* at 6.

[6] Petitioner reported experiencing "a nonspecific upper respiratory tract infection without fever but some cough and nasal discharge," characterized as "[u]pper respiratory tract syndrome." Exhibit 10 at 3, 6.

Moreover, when the neurologist opined that Petitioner's condition met the criteria for GBS, he cited only the late February symptomology. Exhibit 11 at 3. The neurologist referenced the bowel issues Petitioner experienced only when opining they did not qualify as exclusionary criteria. *Id.* at 4. And he characterized those symptoms as "transient bowel and bladder dysfunction of unclear cause antedating the typical Guillain Barre motor and sensory symptoms and signs, . . . resolv[ing] before development of the limb weakness." *Id.* This internal inconsistency further erodes any probative value this letter may have provided.

Finally, and as I stated when dismissing this case, even if I gave Petitioner's assertions about an earlier onset more weight, they would describe a GBS course inconsistent with what is known about the illness. In the vast majority of cases, GBS is an acute and monophasic condition. It is not known to present with bouts of incontinence prior to neurological symptoms that remains subacute for weeks or months. *See*, e.g., *Chinea v. Sec'y of Health & Human Servs.*, No. 15-095V, 2019 WL 1873322, at, *31, 33 (Fed. Cl. Mar. 15, 2019), *review denied*, 144 Fed. Cl. 378 (2019). It is not preponderantly likely that Petitioner would have experienced GBS onset in the form she described in January, only to manifest acutely at the end of February – with all of these symptomatic events occurring a fairly long time after the purported instigating event of vaccination.

The record in this case thus lacks any objective evidence supporting Petitioner's assertion that she experienced symptoms such as fatigue and urinary or fecal incontinence, and with an appropriate onset and other characteristics linking them to her GBS. And the onset of her neurologic GBS symptoms was too late to satisfy even the lower requirement of reasonable basis. Moreover, Petitioner failed to provide any objective evidence addressing the URI she experienced in late January or early February 2020 – a factor that further diminishes the likelihood of a successful showing since the infection occurred far closer in time to Petitioner's GBS onset than her vaccination.

Given the above, the claim was objectively untenable from the outset. There were no legitimately-disputed facts that would provide even a scintilla of evidence to support the claim. Petitioner's own hope that a special master might "stretch" what is known about GBS to deem this claim possibly tenable cannot substitute for what the record establishes.

A determination about the claim's lack of objective support could have been reached far sooner in the matter. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, counsel reasonably bears the risk in filing a claim that lacks reasonable basis, and therefore may be appropriately denied a fees award.

**Conclusion**

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.